FILED

OCT 2 1 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF OHIO — EASTERN DIVISION

| | |
|---|---|
| SCOTT STEPHEN RALLYA,<br>Plaintiff,<br>v.<br>X CORP.,<br>Defendant. | Civil Action No. ______<br>5:26 CV 2759 |

## COMPLAINT AND REQUEST FOR INJUNCTION

Demand for jury trial withdrawn in advance; the relief sought is purely equitable. A substantially similar complaint was placed in the U.S. mail on October 15, 2026; USPS tracking shows no delivery scan since acceptance, and this Complaint is filed to ensure receipt.

JUDGE ADAMS
MAG. JUDGE HENDERSON

Plaintiff, proceeding pro se, alleges as follows:

## I. PARTIES

1. Plaintiff Scott Stephen Rallya is an adult resident of Cuyahoga Falls, Summit County, Ohio.

2. Defendant X Corp. operates the X (Twitter) social-media platform. Its principal place of business is 800 W. Cesar Chavez St., Austin, Texas 78701 (Terms of Service, Ex. 1). X Corp. is not registered as a foreign corporation with the Ohio Secretary of State; service is directed to its agent for service of process, CT Corporation System, 4400 Easton Commons, Suite 125, Columbus, Ohio 43219, and to its principal place of business.

## II. JURISDICTION AND VENUE

3. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189 (Count I). The Court has federal-question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law counts, 28 U.S.C. § 1367.

4. Venue lies in this District and Division under 28 U.S.C. § 1391(b)(2): the events giving rise to the claims — Plaintiff's authorship, publication, and suppression of his communications from his Ohio residence and business — occurred here.

## III. FACTUAL ALLEGATIONS

*A. Plaintiff's Disability*

5. Plaintiff has been treated for approximately eight years for bipolar disorder with psychotic features, rapid cycling, severe depression, and ADHD, by multiple providers, including Community Support Services (Akron) and a former psychiatrist affiliated with a Maple Heights, Ohio clinic (records identified in the Exhibit Index).

6. These impairments substantially limit the major life activities of communicating, interacting with others, concentrating, thinking, sleeping, and working, within the meaning of 42 U.S.C. § 12102(2)(A). (Cf. § 12102(4)(E) (recognizing "use of assistive technology").) Plaintiff is a qualified individual with a disability.

*B. Assistive Communication and Business Use*

7. Because of these impairments, Plaintiff uses large-language-model software as an assistive communication technology: it structures and sequences his writing so that he can participate in public and professional communication. Such software is an assistive technology device within the technology-neutral federal definition — an item or product system, whether acquired commercially, modified, or customized, used to increase, maintain, or improve the functional capabilities of individuals with disabilities (29 U.S.C. § 3002; accord 20 U.S.C. § 1401(1)) — and its output falls within the "other effective methods" of 42 U.S.C. § 12103(1).

8. Communications composed with such assistance exhibit characteristic patterns, including length and formal structure, that automated moderation systems classify as spam, bot, or low-quality behavior.

9. Plaintiff uses X to conduct and market his business, Hearth & Code — a self-operated AI research and education studio operating under a trade name registered with the Ohio Secretary of State on June 10, 2026 (Name Registration, DOC ID 202616103912, Ex. 8; described therein as "an AI-powered ed-tech platform") — and relies on reach and client contact established there.

10. Hearth & Code is an emerging studio with no established revenue, funded solely by Plaintiff's disability benefits and family support when available.

11. Its work explores the intersection of human and AI interfaces, optimizes workflows for agentic systems, and integrates diverse areas of human knowledge, including spiritual and philosophical matters, toward building a community of seekers.

*C. The Moderation Event, the Collapse, and the Accommodation Request*

12. On October 15, 2026, X's automated systems removed Plaintiff's post at https://x.com/Cognitectus/status/2110732115960598650 without prior notice (Ex. 2, with declaration).

13. This is the first event Plaintiff documented in detail; his investigation of prior and continuing suppression of his account continues, and the account-level analytics export of October 17, 2026 now before the Court documents the full suppression pattern.

14. Between October 9 and October 12, 2026, Plaintiff's account reached 18,453 daily impressions through sustained conversational activity. Between October 13 and October 15, 2026, daily impressions collapsed to 179 — a decline of more than 99 percent from peak, below the account's dormant baseline, while the small audience still reached engaged at a like-rate of roughly one in three — a rate inconsistent with organic decay and consistent with exogenous suppression of delivery (Analytics Exs. A-9–A-11).

15. On October 15, 2026, Plaintiff submitted a written support request asking that X provide reasonable modifications to its enforcement process — advance notice, human review on appeal, and an accommodation route for disability-driven communication styles (Ex. 3). On October 17, 2026, X Premium Support responded that it "has limited visibility on the algorithm," scoped its chat to monetization, verification, and product features, and identified no channel, team, or form responsible for questions about automated labels and reach suppression (Support Exs. A-12, A-13).

*D. Injuries*

16. As a result, Plaintiff has lost business opportunity — no route to surfacing his product or work, and denial of the "building in public" practice central to a solo builder's business model — and has suffered severe emotional distress, corroborated by his treatment history. Plaintiff brings these injuries to establish standing and the need for injunctive relief; he seeks no monetary recovery.

*E. The Public-Accommodation Question*

17. X operates a service establishment open to the public; its marketplace of communication and commerce is both a service establishment and a place of public gathering within 42 U.S.C. § 12181(7)(D), (F), and an accommodation within Ohio Revised Code Chapter 4112. Congress found that discrimination against individuals with disabilities includes "the discriminatory effects of . . . communication barriers" and "exclusionary qualification standards and criteria," 42 U.S.C. § 12101(a).

18. Courts are divided on whether a digital-only service is a place of public accommodation. The First Circuit (Carparts Distribution Center (1994)) and, most recently, the Fourth Circuit (Washington v. Meta Platforms (2025)) have recognized that it can be; the Sixth Circuit's decision in Parker v. Metropolitan Life Insurance Co. (1997) points the other way for physical-nexus claims. Plaintiff does not ask this Court to disregard controlling circuit precedent, but raises the question and expressly preserves it for appellate review, including en banc and certiorari review, so that it may be resolved by the courts empowered to resolve it.

## IV. COUNTS

### COUNT I — Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182(b)(2)(A)(i)–(iii)

19. Plaintiff incorporates paragraphs 1–18.

20. X's automated criteria and enforcement policies — including spam and bot classifications applied to assistive-communication text patterns — screen out, and tend to screen out, individuals whose disabilities require such communication, in violation of § 12182(b)(2)(A)(i).

21. X has failed to make reasonable modifications to its policies, practices, and procedures — including advance notice, human review, and an accommodation route — notwithstanding Plaintiff's request (¶ 15; Ex. 3; Support Exs. A-12, A-13), in violation of § 12182(b)(2)(A)(ii); the absence of any channel for review of automated labels also implicates § 12182(b)(2)(A)(iii) (auxiliary aids and services).

22. Plaintiff seeks injunctive relief: an order requiring advance notice of enforcement actions, human review on appeal, and an accommodation process for documented disability-driven communication, for all users and not Plaintiff alone. Plaintiff does not seek any order compelling specific editorial decisions.

### COUNT II — Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52

23. Plaintiff incorporates paragraphs 1–22.

24. The conduct alleged denies Plaintiff and those similarly situated full and equal accommodations on the basis of disability. Plaintiff seeks declaratory relief and joins this Count in support of the systemwide injunctive relief requested in the Prayer. Plaintiff expressly withdraws any claim for statutory or actual damages under Cal. Civ. Code § 52.

### COUNT III — Ohio Revised Code 4112.02(G)

25. Plaintiff incorporates paragraphs 1–24.

26. X denied Plaintiff full enjoyment of its accommodations, advantages, facilities, and privileges because of disability. Plaintiff seeks declaratory and injunctive relief and expressly withdraws any claim for damages under R.C. 4112.99.

**COUNT IV — Breach of the Implied Covenant of Good Faith and Fair Dealing; in the Alternative, Promissory Estoppel**

27. Plaintiff incorporates paragraphs 1–26.

28. Plaintiff's continued use of the Services and X's Terms of Service form a contract. X exercised enforcement discretion in bad faith — suppressing disability-assisted professional communications without notice — denying Plaintiff the benefit of the contract. Alternatively, X's invitation of public business use, on which Plaintiff reasonably relied to his detriment, supports promissory estoppel. As to this Count, Plaintiff seeks declaratory relief only.

## V. PRAYER FOR RELIEF

Pursuant to 42 U.S.C. § 12188(a) (adopting the remedies and procedures of 42 U.S.C. § 2000a–3(a)), Plaintiff respectfully requests that the Court enter judgment:

(a) **Declaring** that Defendant's application of automated duplicate-content and engagement-ratio filtering to communications produced with assistive technology violates Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189, including § 12182(b)(2)(A)(i)–(iii); the Unruh Civil Rights Act, Cal. Civ. Code § 51; and Ohio Rev. Code § 4112.02(G);

(b) **Permanently enjoining** Defendant to provide, for all users and not Plaintiff alone: (i) *notice* — disclosure to an account when an automated label or suppression action has been applied to it; (ii) *human review* — an appeal path to a person empowered to weigh intention, context, and disability; and (iii) *accommodation* — a process to register an assistive-communication pattern before it is filtered;

(c) **Ordering** Defendant to partner with disability rights and neurodivergence advocacy organizations to develop accessibility standards for AI-assisted communication, including pathways for neurodivergent users to form friendships and social connections, with specific attention to neurodivergent children and youth struggling with mental health dis-

orders;

(d) **Ordering** Defendant to remove the account-age eligibility restriction from its "Under the Hood" transparency tool so that all users, including recently created accounts, can see the labels applied to their accounts;

(e) **Ordering** Defendant to provide periodic compliance reporting to the Court regarding paragraphs (b)–(d) for a period of two (2) years;

(f) **Awarding** Plaintiff the costs of suit; and

(g) **Granting** such other and further equitable relief as the Court deems just — including structural remedies ensuring that no person, and especially no child or young person using assistive communication technology, is filtered from public conversation, friendship formation, or social connection on the basis of disability-driven communication patterns.

**Withdrawal of monetary relief.** Plaintiff expressly withdraws and waives all claims for monetary relief, including statutory damages under Cal. Civ. Code § 52, compensatory damages under Ohio Rev. Code § 4112.99, and contract or estoppel damages. Plaintiff proceeds solely for declaratory and injunctive relief, and withdraws the demand for trial by jury, the relief sought being purely equitable.

**Scope and beneficiaries.** Plaintiff proceeds individually, on the basis of his own injury, and seeks systemwide relief for the protection of *all* neurodivergent and disabled persons whose communication relies on assistive, structured, or repetitive patterns — with particular attention to neurodivergent children and youth, whose speech most closely resembles the duplicate patterns that automated filters were built to suppress, and who are least able to identify, document, or appeal such suppression. This Prayer is made not for Plaintiff's account alone, but so that the way the next child loves and speaks is read as love and speech, and not filtered as spam.

**EXHIBIT INDEX (as referenced in this Complaint)**

Ex. 1 — X Terms of Service (address and arbitration provisions); Ex. 2 — October 15, 2026 post-removal capture with declaration; Ex. 3 — October 15, 2026 written accommodation request; Ex. 8 — Ohio trade-name registration, DOC ID 202616103912; Analytics Exs. A-9–A-11 — account and

per-post analytics exports, September 20 – October 17, 2026; Support Exs. A-12–A-13 — Premium Support correspondence, October 17, 2026.

Statutory citations verified against the official 2011 and 2024 editions of the United States Code, Title 42 (Office of the Law Revision Counsel; govinfo.gov).

Dated: October 17, 2026

/s/ Scott Stephen Rallya

Scott Stephen Rallya, Plaintiff *Pro Se*
3550 East Prescott Circle, Cuyahoga Falls, OH 44223
203-803-8821 · srallya@gmail.com